This case requires an interpretation of the Parental Kidnapping Prevention Act (P.K.P.A.), 28 U.S.C.A. § 1738A (West Supp. 1984), and Alabama's version of the Uniform Child Custody Jurisdiction Act (U.C.C.J.A.), Code 1975, § 30-3-20, et seq.
The Alabama Court of Civil Appeals, 463 So.2d 158, found the following facts to be pertinent:
 "The husband serves as a member of the U.S. Coast Guard. His domicile is in Florida. The parties were married in 1971. In 1979, in the course of the husband's military service, the parties moved to New Orleans, Louisiana.
 "In March 1982, the parties separated and the wife filed for divorce in Louisiana. *Page 164 
In April 1982, a consent judgment was entered in Louisiana by the agreement of both parties where, although not granting a divorce, custody of the two minor children was awarded to the wife along with child support, `temporary alimony,' and the marital home in New Orleans.
 "In December 1982, the wife and the children moved to Mobile County, Alabama. On July 15, 1983, some fifteen months after the consent judgment, the husband filed an answer and counterclaim to the Louisiana complaint.
 "In Mobile on July 25, 1983, the wife filed for divorce in the circuit court. Apparently, sometime between the wife's move to Alabama and the sudden flurry of legal action in the summer of 1983, the husband left Louisiana and moved to Texas where he now resides.
 "On August 4, 1983, while in Mobile exercising his visitation rights pursuant to the Louisiana decree, the husband was served with the wife's Alabama complaint. On the summons there was typed in bold letters, "NOTICE: YOUR CASE IS SET FOR A TRIAL ON THE MERITS for September 9, 1983, at 9:00 A.M., in the DOMESTIC RELATIONS DIVISION COURTROOM. . . ."
 "On September 6, 1983, the husband filed a motion to dismiss supported with argument and authorities in the Mobile County Circuit Court. On September 9th, the day set for trial on the merits, the husband did not appear and the trial court proceeded without him. The trial court denied the husband's motion to dismiss and then evidence was heard ore tenus on the merits. On September 22, 1983, the trial court entered its final judgment divorcing the parties. The Louisiana decree, as far as it concerned custody and support, was by order of the Alabama circuit court incorporated into the Alabama judgment."
From that judgment, Blanton appealed to the Court of Civil Appeals, which affirmed the judgment and denied Blanton's request for rehearing. Blanton then petitioned here for certiorari and requested oral argument. Both were granted, primarily to determine whether the Court of Civil Appeals correctly decided the question of whether the Mobile Circuit Court had jurisdiction of the cause.
Blanton contends that the Mobile court was barred from exercising jurisdiction over the Blanton children by the two statutes hereinbefore mentioned, which read, in pertinent part:
§ 1738A (g)
 "A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another state where such court of that other state is exercising jurisdiction consistently with the provisions of this section to make a custody determination." Code 1975, § 30-3-26
 "A court of this state shall not exercise its jurisdiction under this article if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of
 another state exercising jurisdiction substantially in conformity with this article, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons."
To the extent that the P.K.P.A. conflicts with the U.C.C.J.A., the federal statute preempts the provisions of the state statute. Flannery v. Stephenson, 416 So.2d 1034 (Ala.Civ.App. 1982). Therefore, in order to determine if the Court of Civil Appeals erred by affirming the Mobile court's exercise of jurisdiction, we look solely to the P.K.P.A. and cases interpreting it.
Blanton's fundamental argument is that § 1738A (g) prohibited the initial exercise of jurisdiction by the Mobile court because, at the time the Mobile court exercised its jurisdiction, Mrs. Blanton's divorce action and his counterclaim thereto were still pending in Louisiana. At first glance, this argument seems to have some merit. Because our research reveals no previous decision which is on point with the facts of the present case, we have closely examined the *Page 165 
statute itself, the cases interpreting it, and various law review articles discussing it, and, based on that study, we have attempted to apply our understanding of § 1738A (g) to the present facts. Having done so, we find no error in the judgment of the Court of Civil Appeals.
It is undisputed that in April 1982 the Louisiana court entered a consent judgment providing for custody and visitation of the Blanton children and that on September 22, 1983, the Circuit Court of Mobile County entered a final judgment of divorce providing for the custody and support of the same two children. Blanton does not dispute the fact that the Mobile court had jurisdiction to make a custody determination; but he strongly argues that § 1738A (g) prohibited the court from exercising that jurisdiction.[1]
In order for Blanton to be correct: (1) the Mobile court's decree must have been a custody determination within the meaning of § 1738A (b)(3); (2) at the time the Mobile court exercised jurisdiction there must have been an action pending in Louisiana; and (3) at the same time, the Louisiana court must have been exercising jurisdiction consistently with the provisions of the P.K.P.A., § 1738A (g). The mere filing of an action was not an event giving Louisiana absolute and interminable jurisdiction. See Peterson v. Peterson,464 A.2d 202, 205 (Me. 1983).
A simple reading of § 1738A (b)(3) shows that, regardless of whether the Mobile court's decree was temporary or final, it was a custody determination within the meaning of the P.K.P.A. because it was "`an order of a court providing for the custody' of a child." E.E.B. v. D.A., 89 N.J. 595, 605, 446 A.2d 871,876 (1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203,75 L.Ed.2d 445, rehearing denied, 460 U.S. 1104, 103 S.Ct. 1806,76 L.Ed.2d 369 (1983); accord, Matter of McKenzie,439 So.2d 700 (Ala.Civ.App.), writ quashed, 439 So.2d 702 (Ala. 1983),Salisbury v. Salisbury, 657 S.W.2d 761 (Tenn.Ct.App. 1983).
Furthermore, it is obvious to this Court that Mrs. Blanton's divorce complaint and her husband's counterclaim were and, as far as the record before us indicates, are still pending in Louisiana. Because the P.K.P.A. does not define the words "during the pendency," we must look to the common law meaning of those terms. In Louisiana, as in Alabama, a suit is commenced when a plaintiff files a complaint, sometimes referred to as a petition, and it remains pending until terminated by a decision on the merits, or by a judgment of dismissal, or by some other action by a court. Jobson v. Hodge,347 So.2d 57 (La.Ct.App.), writ denied, 350 So.2d 674 (La. 1977). The record clearly shows that a complaint was filed in Louisiana and the record is completely devoid of any evidence which shows a dismissal or final adjudication in that action. Nevertheless, even though the divorce proceedings were pending under Louisiana law at the time Mrs. Blanton's Mobile divorce proceeding was filed, they did not bar the Mobile court's exercise of jurisdiction, because, at that time, the Louisiana court was no longer exercising jurisdiction consistently with the P.K.P.A.[2]
In order for the Louisiana court to have been exercising jurisdiction consistent with the P.K.P.A. at the time the Mobile court exercised its jurisdiction, the Louisiana court obviously must have had jurisdiction at that time under theP.K.P.A. to enter its own custody determination.[3] *Page 166 
Under § 1738A (c) such jurisdiction could have existed only if, at that time, the Louisiana court: (1) had jurisdiction under Louisiana law, § 1738A (c)(1); and, (2) met one of four alternative jurisdictional requirements set forth in § 1738A(c)(2)(A) through (D), Salisbury, supra, at 767, 768; or, (3) if the court previously had such jurisdiction which, pursuant to § 1738A(c)(2)(E), continued until the time the Mobile court exercised its jurisdiction.
Regardless of whether the Louisiana court had jurisdiction under its own state's *Page 167 
laws, La.Rev.Stat.Ann. § 13:1702 (West 1983), at the time in question, it had no jurisdiction under § 1738A (c)(2). Jurisdiction was not established under § 1738A (c)(2)(A)(i) or (ii) because, as previously stated, Alabama, not Louisiana, had become the children's home state and had been such for more than six months. Jurisdiction was also not established under § 1738A (c)(2)(B) because of Alabama's jurisdiction under § 1738A (c)(2)(A)(i), nor was it established under § 1738A (c)(2)(C) because the children were not present in Louisiana at that time. Finally, the Louisiana court had no jurisdiction under § 1738 (c)(2)(D) because the Alabama court chose to exercise its jurisdiction rather than declining to do so.
Even though the Louisiana court had no jurisdiction under § 1738A (c)(2)(A) through (D) at the time the Mobile court exercised jurisdiction, it still could have had jurisdiction sufficient to trigger application at § 1738A (g) if it previously had jurisdiction under subsections (c)(1) and (c)(2)(A) through (D) and that jurisdiction continued until the time the Mobile court acted to exercise its jurisdiction. From the record before us, it is clear that, at the time Mrs. Blanton filed for divorce in Louisiana, the critical time for determining jurisdiction, Mitchell v. Mitchell, 437 So.2d 122
(Ala.Civ.App. 1982), the Louisiana court had jurisdiction under § 1738A (c)(1) and (c)(2)(A)(i) because Louisiana was, at that time, the children's home state. Moore v. Moore, 379 So.2d 1153
(La.Ct.App. 1980). The dispositive issue in this case is how long that jurisdiction continued.
Under § 1738A (c)(2)(E), once jurisdiction was established in Louisiana under § 1738A (c)(1) and (2) it continued pursuant to § 1738A (d) "as long as the requirement of subsection (c)(1) . . . . continue[d] to be met and such State remain[ed] theresidence of the child or of any contestant." (Emphasis added.) Thus, regardless of how long its jurisdiction continued under state law, the Louisiana court's jurisdiction under the P.K.P.A. continued only as long as one of the Blanton children, Mrs. Blanton, or Mr. Blanton continued to reside there. If one or more of the above-named parties continued to reside in Louisiana at the time the Mobile court exercised its jurisdiction, the Louisiana court's continuing jurisdiction triggered § 1738A (g) and the action of the Mobile court, even though proper under Alabama's "home state" provision, was barred. On the other hand, if all the parties left Louisiana prior to the time the Mobile court acted, the Louisiana court was no longer exercising its jurisdiction consistently with the P.K.P.A. at that time, leaving the Mobile court free to act.
From the record before us, it is clear that the Louisiana court's continuing jurisdiction had already terminated when the Mobile court acted. It is undisputed, and the Court of Civil Appeals found, that Mrs. Blanton and both Blanton children left Louisiana sometime in December 1982 and that sometime thereafter Blanton moved to Texas. The Court of Civil Appeals found that Blanton's move came sometime between December 1982 and the "sudden flurry of legal action in the summer of 1983." We can only interpret this finding to mean that Blanton's Louisiana residency terminated prior to the filing of Mrs. Blanton's Mobile divorce petition on July 25, 1983, and, therefore, prior to any exercise of jurisdiction by the Mobile court. Blanton has presented nothing by way of additional or corrected facts, Rule 39 (k) Ala.R.App.P., to persuade us otherwise.
It is well established that when reviewing decisions of a court of appeals on writ of certiorari this Court is limited to reviewing those facts found by that court and other properly presented additional or corrected facts. Rule 39 (k) Ala.R.App.P. Those facts found by the court below will be presumed correct unless shown by the petitioner to be in error.Life Insurance Co. of Georgia v. Miller, 292 Ala. 525,296 So.2d 900 (1974), Ex parte Newbern, 286 Ala. 348, 239 So.2d 792
(1970), dismissed, 409 U.S. 813, 93 S.Ct. 60, 34 L.Ed.2d 69
(1972).
Considering the fact that all of the parties left Louisiana prior to the time the *Page 168 
Mobile court exercised its jurisdiction, we hold that the Louisiana court had no jurisdiction under the P.K.P.A. at that time and, therefore, was not exercising, and could not have exercised, jurisdiction consistently therewith. Consequently, § 1738A (g) did not apply.
Blanton's next contention is that the Mobile court violated Code 1975, § 30-3-26, because, even after being informed of the alleged pending action in Louisiana, it refused to communicate with the Louisiana court and exercised its jurisdiction. We find that, because the Louisiana court no longer had jurisdiction, any technical violation of § 30-3-26 was harmless.
We will not discuss the other two issues raised by Blanton, that service of process was improper and that he was not given an opportunity to answer after denial of his motion to dismiss, finding them to have been properly resolved by the Court of Civil Appeals.
AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
ALMON, J., not sitting.
[1] The Mobile court had home state jurisdiction under both state law, § 30-3-23 (a)(1)a., and § 1738A (c)(2)(A)(i), because, at the time wife filed her petition in Mobile, the Blanton children had lived in Alabama for at least six consecutive months.
[2] In Losey v. Losey, 412 So.2d 639 (La.Ct.App. 1982), the Louisiana appeals court recognized that a court can have jurisdiction to adjudicate a divorce proceeding even though it has no jurisdiction to determine child custody.
[3] The P.K.P.A. provides in pertinent part:
"(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
"(b) As used in this section, the term —
(1) `child' means a person under the age of eighteen;
 (2) `contestant' means a person, including a parent, who claims a right to custody or visitation of a child;
 (3) `custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;
 (4) `home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;
 (5) `modification' and `modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;
 (6) `person acting as a parent' means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;
 (7) `physical custody' means actual possession and control of a child; and
 (8) `State' means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.
"(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if —
 (1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
 (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
 (B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
 (C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
 (D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
 (E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
"(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
"(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.
"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
 (1) it has jurisdiction to make such a child custody determination; and
 (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."