Angela **MARTINEZ**

v.

Richard **REED**, et al.

**Civ. A. No. 85–3310.**

United States District Court,
E.D. Louisiana.

Dec. 11, 1985.

Ruben J. Bailey, New Orleans Legal Assistance Corp., Marrero, La., Mark A. Moreau, New Orleans Legal Assistance Corp., New Orleans, La., Ellis B. Murov, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for plaintiff.

Terrence L. Hauver, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, La., for defendants.

## MEMORANDUM OPINION

MENTZ, District Judge.

On Tuesday, October 15, 1985, this matter came before the Court pursuant to 28 U.S.C. 1738A, which is the federal act giving full faith and credit to certain child determination decrees that have been made in accordance with that act. This statute was enacted in 1980, and therefore is applicable to this action.

This child custody dispute arises between Angela Martinez, a foreign national and citizen of Mexico, and Richard and Patricia Reed, residents of Opelika, Alabama, each claiming the right of custody of Ms. Martinez's male child.[1] The child, an American citizen by birth, is referred to by his natural mother as "Maico Lopez Martinez" and by his custodial parents as "Richard Clayton Reed." The "Reeds" claim they entered into an agreement with Ms. Martinez to adopt her unborn child and that on April 23, 1984, they took physical custody of the new born child and returned to their home in Opelika, Lee County, Alabama. Angela Martinez now claims she never intended to give up her child for adoption and it was never made clear to her that that was the agreement into which she had entered.

The Reeds instituted a temporary custody proceeding in Alabama on June 15, 1984. On November 19, 1984, the Alabama court awarded the Reeds temporary custody of the child. On October 19, 1984, the plaintiff filed a writ for habeas corpus in the Twenty-fourth Judicial District Court of the Parish of Jefferson, Louisiana, which was transferred to Civil District Court of the Parish of Orleans, Louisiana. After a hearing on the merits, the Louisiana Court on March 12, 1985, ordered the child be returned to his natural mother.

Conflicting custody decrees have been handed down by the State of Alabama and the State of Louisiana in reference to Maico Lopez Martinez. This Court's purpose is to determine which state made its custody

---

1. The child's father is not married to Ms. Martinez and has not made a claim or an appearance.

determination consistently with the provisions of 28 U.S.C. § 1738A, commonly referred to as the Federal Parental Kidnapping Prevention Act. This district court has federal question subject matter jurisdiction over plaintiff's claim brought under the Federal Parental Kidnapping Prevention Act. *See Heartfield v. Heartfield,* 749 F.2d 1138 (5th Cir.1985) (District Court had federal question jurisdiction to enforce compliance with provisions of the PKPA where courts of two states asserted jurisdiction over a custody determination).

At the inception of the October 1985 hearing, the Court had indicated to counsel that it would consider the testimony and exhibits adduced in Alabama's hearing and the testimony and exhibits adduced in the Louisiana hearing. The Court also requested certain witnesses to testify for the purpose of finding out what was the intention of Ms. Martinez in executing the two written acts in anticipation of adoption and the posture of the parties during that period of time. After considering the memoranda, pleadings, exhibits, the two state court records, the live testimony, and the documents submitted in this matter and based on the record and the law, the Court rendered oral reasons in open court on October 17, 1985 ruling that the Louisiana court had made its custody determination consistently with the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A but that the Alabama Court had not made its custody determination consistently with said Act. This opinion provides written reasons supporting this Court's October 1985 ruling. To the extent that overlap exists between them, the Court's findings and conclusions are to be treated interchangeably.

## FINDINGS OF FACT

### I.

Upon consideration of the testimony of Mrs. Rosario Lopez of Chicago, Dona Marie Martin of Marrero, the social worker, Mrs. Nasralla, the Reeds' attorney, Mrs. Zoe Smith Wong, and Doctor Sarano of New Orleans, it appears that Ms. Martinez' expressed intention was to leave Chicago and come to New Orleans in April of 1984 to have her unborn baby adopted in a good home.

### II.

The Court finds that the two written documents executed April 5, 1984, (the letter signed by Angela Martinez authorizing West Jefferson Hospital to release Ms. Martinez's child to Ms. Wong, the attorney representing the adopting parents) and April 23, 1984, (the document signed by Ms. Martinez granting sole custody to the Reeds in anticipation of adopting the new born child) were signed by Mrs. Martinez with her full consent and of her own free will and accord.

### III.

The child in question was born at West Jefferson Hospital on April 21, 1984. It is apparent that between the baby's birth and May 11, 1984, Ms. Martinez changed her intention for some reason when she refused to sign the act of voluntary surrender. On May 11, 1985, Attorney Kathy Lampart was acting as her advisor.

### IV.

It was known by all parties that the act of voluntary surrender under the Louisiana adoption act could not be legally signed for at least five days after the birth of the child. Louisiana Revised Statutes, Title 9, Section 422.7. Some of these persons also were aware that the mother could change her mind during the 30-day period following the execution of the act of voluntary surrender and thereby reclaim the child. R.S. 9:422.10.

### V.

The judgment rendered by the Civil District Court of the Parish of Orleans in Louisiana puts much emphasis on the fact that the Notarial Act of April 23, 1984, does not comply with the formal act of surrender as established by Louisiana Revised Statutes 9:422 *et seq.* However, this act of April 23, 1984 was not and could not

have been intended as anything more than a custody agreement upon which the Alabama Court relied in issuing its decree.

## VI.

The Court is of the opinion that Ms. Martinez has a basic knowledge of the English language, even though she has been depicted as knowing only Spanish. As a matter of fact, she answered one of the judge's questions before her interpreter translated it for her. It is hardly possible that she could have lived in the United States of America for five years without learning some basic English, considering the easy accessibility to television, radio and other media by the public.

## VII.

The Court finds that Angela Martinez' testimony was impeached by a series of witnesses, as named in paragraph one of this opinion, and in particular by Mary Martin's testimony in which Mrs. Martin demonstrated for the Court how she translated these instruments from English to Spanish line by line to Ms. Martinez. The natural mother's statements that she understood the first document to be an agreement providing for the care of her children [2] in the event that she died, and that the second document was only to provide shots for the baby, lack factual basis.

## VIII.

The Court finds that the Alabama law relative to the Alabama Uniform Child Custody Jurisdiction Act codified at Alabama Code § 30–3–20 *et seq.* and the Louisiana Uniform Child Custody Jurisdiction Act codified at LSA R.S. 13:1700 *et seq.* are substantially the same.

## IX.

The Uniform Child Custody Jurisdiction Act ("UCCJA") cross annotation shows

that said Act has been adopted by both Alabama and Louisiana.

## X.

Although Angela Martinez did not probably realize it, she may have been in a better legal position had she signed the formal act of surrender on May 11, 1984, thus guaranteeing her thirty days to change her mind.

## XI.

The Court takes judicial notice that many mothers who choose to give their natural child up for adoption often do change their mind and decide to reclaim their child. Since the Louisiana law would allow Ms. Martinez to change her mind within thirty days after the execution of an act of formal surrender, the Court finds that she has the right to change her mind during the period prior to the execution of the act of surrender. The Court further notes that no contention has been made in this particular action as to any possible unfitness of Angela Martinez.

## XII.

The Alabama welfare report of August 28, 1984, made in connection with the juvenile court proceedings before the Honorable James Noel Baker of Alabama indicates that the Reed family have all of the facilities to provide this child with a fine upbringing. They have demonstrated in many ways their love for this child. The most traumatic part of this whole matter will be if the baby is removed from the Reed household. No matter what the ultimate outcome of this custody dispute is, "Richard Clayton Reed", will undoubtedly be the "big loser" in this whole process.

## XIII.

It has been suggested that Ms. Martinez has been victimized by the very people who pretended to befriend her; however, the testimony adduced indicates that more than

---

**2.** Angela Martinez was referring to her forthcoming child to be born and her daughter, Brenda.

likely, the opposite is true. Moreover, Angela Martinez has had expended for her benefit, and for the benefit of the baby, the life savings of a fine couple whose only fault was their desire to have a child.[3]

## XIV.

This case has been full of emotionalism and the Court is well aware of the concern that both parties have for this particular child. However, the Court is required to decide a legal question and must pass upon this matter based upon the existing law.

### CONCLUSIONS OF LAW

#### I.

The legal issue the Court is faced with is whether Alabama properly exercised jurisdiction consistently with the provisions of 28 U.S.C. Section 1738A, which gives full faith and credit to custody determinations made in accordance with that act.

#### II.

The Parental Kidnapping Prevention Act was enacted to prevent jurisdictional conflict and competition over child custody and to deter parents or other contestants from "abducting" or removing a child for the purpose of obtaining custody awards. *See Peterson v. Peterson,* 464 A.2d 202 (Me. 1983).

#### III.

■ No condition of wrongdoing is necessary to invoke the provisions of 28 U.S.C. § 1738A. *Patricia R. v. Andrew W.,* 121 Misc.2d 103, 467 N.Y.S.2d 322 (N.Y.Fam. Ct.1983).

#### IV.

■ Both the states of Alabama and Louisiana have almost identical statutes in relation to the Uniform Child Custody Jurisdiction Act and the federal act. More-over, the PKPA and the UCCJA govern interstate child custody disputes. *Ex parte Blanton,* 463 So.2d 162, 164 (Ala.1985); *Applegate v. Gant,* 460 So.2d 1293, 1294 (Ala.Civ.App.1984); *Ex parte Lee,* 445 So.2d 287, 291 (Ala.Civ.App.1983). To the extent that the Federal Parental Kidnapping Prevention Act differs from the UCCJA, the difference must be determined in favor of the federal version, for it prevails in the event of conflict between federal and state statutes. *Ex parte Blanton, supra; Applegate v. Gant, supra; Ex parte Lee,* 445 So.2d at 290, 291. In other words, if either state's statutes are inconsistent with the federal act, federal law is considered supreme and questions of jurisdiction arising in interstate child custody matters must be decided by reference to the PKPA. *Ex parte Blanton,* 463 So.2d at 164; *Ex parte Lee,* 445 So.2d at 291. Therefore, in this regard, the Court has studied in depth the language of 28 U.S.C. § 1738A.

#### V.

The federal act states in pertinent part in Section (c) that, "A child custody determination made by a court of a state is consistent with the provisions of this section *only if,*

(1) The court has jurisdiction; *and*

(2) That one of the following conditions is met:

(A) Such state (i) is the home state of the child on the date of the commencement of the proceeding or, (ii) had been the child's home state within six months before the date of the commencement of the proceeding and the child is absent from such state because of his removal or retention by a contestant or for other reasons and a contestant continues to live in such state."

(emphasis added). There are additional sections or conditions, (B), (C), and (D), of

---

**3.** After providing for the hospital and medical expenses of Ms. Martinez, as well as the entire expense for the baby for a year and a half, Ms. Martinez may have to recognize this obligation and make restitution in the event that the state court finally decrees that she is entitled to custody.

the statute which the Court finds not to be applicable to the present fact situation.

## VI.

The federal statute defines the term, "home state" to mean

the state in which immediately preceeding the time involved, the child lived with parents, a parent, or a person acting as parent for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any such persons. Periods of temporary absence of any such persons are counted as part of the six months or other period.

28 U.S.C. § 1738A(b)(4)

## VII.

The child was born in Louisiana on April 21, 1984, and, two days later, was removed by Mr. and Mrs. Reed to the state of Alabama. Whether Ms. Martinez knowingly gave consent to the Reeds to remove the child for custody purposes is actually immaterial in relation to applying the federal act. The Court, however, does realize that the removal, the factual details of the intent behind the removal and whether said intent was made in bad faith would be material from the standpoint of the Alabama court. The legal issue present before this Court is whether the Alabama court exercised jurisdiction over the child consistently with the provisions of the federal act.

## VIII.

■ The Court finds that the Alabama court did have jurisdiction over the child in June of 1984. A.L. § 12–15–30.[4] Alabama has an obligation to protect and care for children who are present in the state without a guardian. Alabama appointed a guardian ad litem, and then held a hearing to determine who should take care of the child at that time. The Alabama court awarded the Reeds' temporary custody of

the child in order that he would have proper shelter and medical care until this conflict could be resolved. A simple reading of 28 U.S.C. 1738A(b)(3) shows that, regardless of whether the Alabama court's decree was temporary or final, it was a custody determination within the meaning of the PKPA because it was " 'an order of a court providing for custody' of a child." *Ex parte Blanton*, 463 So.2d 162, 165 (Ala. 1985), citing *E.E.B. v. D.A.*, 89 N.J. 595, 605, 446 A.2d 871, 876 (1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983). Thus, the Alabama court meets the first requirement—that of jurisdiction. However, the mere filing of an action is not an event giving Alabama absolute and interminable jurisdiction. *Ex parte Blanton*, 463 So.2d at 165; *Peterson v. Peterson*, 464 A.2d at 205.

It is interesting to note that at the end of the Alabama hearing, on page 141 of the transcript, one of the last things Judge Baker said was, "So we will wait on Louisiana." Also, in a letter from Judge Baker dated August 1, 1984, addressed to Mr. Ruben Bailey, the plaintiff's attorney, Baker states that, "This Court is well aware of the fact that it is only a custodian of this child pending whatever decision is made by the Louisiana Court." Having found the Alabama court to have jurisdiction, the Court must now determine whether Alabama also meets the "home state" condition previously explained.

## IX.

In the case of *Ex Parte Sullivan*, 407 So.2d 559 (Ala.1981), the Alabama court held that adoption is purely statutory and was unknown to the common law. 407 So.2d 562–63. The courts of Alabama have always required strict adherence to statutory requirements in adoption proceedings. The *Sullivan* court, citing *Davis v. Turner*, 337 So.2d 355, 360–61 (Ala.Civ.App. 1976), *writ denied*, 337 So.2d 362 (Ala. 1976), stated that "Because the exercise of

---

**4.** However, as previously acknowledged, the federal law, 28 U.S.C. § 1738A, supersedes state law in determining which state has issued a custody decree consistently with § 1738A when conflicting decrees exist. *Ex parte Blanton*, 463 So.2d at 164.

sovereign power involved in adoption curtails the fundamental rights of the natural parent, the adoption statutes must be closely adhered to." 407 So.2d at 563. Louisiana has also clearly spoken on this issue. Adoption statutes, being in derogation of natural rights of the legitimate parent of a child, must be strictly construed and persons proceeding thereunder must strictly comply with it. *Roy v. Speer*, 249 La. 1034, 192 So.2d 554 (1966). The strict adherence to statutory requirements is applicable to the present acts which are being reviewed.

## X.

A reasonable construction of 28 U.S.C. § 1738A clearly indicates that the state of Alabama could not be classified as the home state because the child had been brought to Alabama for the purpose of gaining permanent custody of the child. 28 U.S.C. § 1738A(c)(2)(A)(ii) clearly states that a child's "home state" is not destroyed by the fact that he or she is removed by a contestant to another state. Even periods of temporary absence of any child are counted as part of the period required for home state status to attach. 28 U.S.C. 1738A(b)(4). Although the June 1984 proceeding in Alabama was filed first, before the natural mother filed her suit in Louisiana on October 19, 1984, the Alabama court's child custody determination was not made consistently with the provisions of the federal act and, thus, the Reed's priority in filing their action does not outrank the natural mother's suit in Louisiana. *See Mitchell v. Mitchell*, 437 So.2d 122, 126 (Ala.Civ.App.1982).

## XI.

The Court finds the natural mother's suit was filed within six months of the child's birth in Louisiana. Thus, Louisiana's "home status" cannot be destroyed by the Reeds' removal of the child for custody purposes.

## XII.

The child was born in Louisiana, the mother, a contestant in this action, still resides here in Louisiana, the voluntary surrender documents were signed here in Louisiana, and it appears that the intention of all parties was that the proposed adoption of Maico Lopez Martinez was to take place here in Louisiana. Further, even if the voluntary surrender act had been properly signed under Louisiana law, the natural mother would have the right to revoke her consent with thirty days of signing. *See* R.S. 9:422.10. Finally, the Reeds could not and cannot adopt the child in Alabama, as that state requires that a party notify the State Welfare and Pension Department before a child is brought into the state when an adoption of such a non-resident child is intended. The Reeds did not do this. Therefore, their right to adopt the child in Alabama was foreclosed. Thus, only Louisiana can be classified as the "home state".

## XIII.

The Court finds that the Louisiana court has subject matter jurisdiction pursuant to Louisiana Revised Statute 13:1702(A)(1) *and* is the "home state" pursuant to 28 U.S.C. § 1738A. Therefore, the Louisiana Court exercised jurisdiction consistently with the provisions of the federal act.

## CONCLUSION

A strict construction of 28 U.S.C. § 1738A requires the Court to find that the Alabama court did not make its child custody determination consistently with the provisions of the federal act since it does not meet the "home state" condition and thus cannot be allowed to proceed. Since Louisiana has appropriate jurisdiction *and* is the "home state" under the federal act, only the Alabama juvenile court proceeding shall be stayed and the Louisiana proceeding shall be allowed to continue in its final determination of which contestant should ultimately have custody of the child. Louisiana has exercised jurisdiction consistently with the federal act and the stay as to

Louisiana shall be lifted and the state appeal filed by the Reeds shall be allowed to proceed.

## ON RECONSIDERATION

On November 27, 1985, the Court heard oral argument on defendants' motion for new trial and for stay of execution. Defendants' motion for new trial was DENIED. Counsel for defendants argued that he had not been given an adequate opportunity to brief the legal issue whether neither Alabama nor Louisiana qualified as the "home state", thereby requiring the Court to consider the alternative jurisdictional tests set forth in 28 U.S.C. § 1738A(c)(2), (B), (C) or (D). The Court ordered the parties to file briefs on this issue by December 6, 1985 at which time the Court would reconsider this issue.

The defendants argued that neither Alabama nor Louisiana could qualify as the "home state" and thus, the Court would be *required* to consider the next alternative jurisdictional test, 28 U.S.C. § 1738A(c)(2), (B),—the "best interest/substantial connection" test. After careful review of the memoranda submitted by the defendants and plaintiff, the law, the statute and the above reasons, the Court finds that its original ruling of October 17, 1985 is proper and correct. Moreover, the Supreme Court of Alabama in *Davis v. Turner*, 337 So.2d 362 (1976) held that the "child's best interest, *as a matter of law*, lies with its mother absent a finding that the mother is unfit to have custody of her child." *See also Chandler v. Whatley*, 238 Ala. 206, 189 So. 751 (1939). No contention has been made in this particular action as to any possible unfitness of the natural mother.

In addition, pursuant to a strict construction of the federal act, Louisiana is the "home state". The federal act is very rigid, permits the exercise of little or no judicial discretion and seeks to give more certainty to the assumption of jurisdiction by courts in interstate child custody conflicts. *Ex parte Lee*, 445 So.2d 287, 290 (Ala.Civ.App.1983). Since the definition of "home state" is fixed by 28 U.S.C. § 1738A, this Court lacks jurisdiction to change it. The temporary stay order entered by this Court on November 21, 1985 prohibiting plaintiff from executing this Court's November 6, 1985 judgment is hereby lifted.

IT IS SO ORDERED.