Angela **MARTINEZ**

v.

Richard **REED**, et al.

Richard **REED**, et al.

v.

**NEW ENGLAND REINSURANCE CO.**, et al.

Angela **MARTINEZ**

v.

Zoe Smith **WONG**, et al.

Civ. A. Nos. 85–1712, 87–4653 and 87–3774.

United States District Court, E.D. Louisiana.

April 12, 1988.

---

Linda Burke, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, La., for plaintiffs.

Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

### ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the motion of plaintiffs, Richard and Patricia Reed, to reconsider the Court's ruling of January 4, 1988, granting the motion of defendant, Zoe Smith Wong, for summary judgment. Also before the Court is Zoe Wong's motion for entry of final judgment or, alternatively, motion for certification.[1] The primary issue to be determined is whether the Reeds' action for legal malpractice has prescribed.

The facts which gave rise to this litigation are as follows. Richard and Patricia Reed have been engaged in protracted litigation against Angela Martinez over the custody of the male child of Ms. Martinez. In April, 1984, Ms. Martinez, unwed and pregnant, came from Chicago, Illinois to New Orleans, Louisiana, for the express purpose of having her unborn baby adopted into a good home. *Martinez v. Reed*, 623 F.Supp. 1050, 1052 (E.D.La.1985), *aff'd.*, 783 F.2d 1061 (5th Cir.1986). The baby, referred to as Richard Clayton Reed by the Reeds and Maico Lopez Martinez by Ms. Martinez, was born at West Jefferson General Hospital on April 21, 1984.

After her arrival in New Orleans, Ms. Martinez signed a notarized document authorizing West Jefferson General Hospital to release her unborn child which was to be delivered at the hospital in the near future to Zoe Wong, the attorney for the adopting parents, Mr. and Mrs. Reed. *See* Custody Agreement dated April 5, 1984. On April 23, 1984, two days after the baby's birth, Ms. Martinez signed another document prepared by and executed before Zoe Wong, who is also a notary public, which granted the Reeds sole custody of her baby "in anticipation of the proposed adoption of the said child by Mr. and Mrs. Reed...." *In Re: Custody of Reed*, Reasons for Judgment, No. 86–3919, p. 4 (Civ.D.Ct., Orleans Parish, La., Oct. 24, 1986). Ms. Martinez signed these documents "with her full consent and of her own free will and accord." *Martinez v. Reed*, 623 F.Supp. at 1052. However, by May 11, 1984, when presented with an act of surrender, Ms. Martinez had changed her mind about the adoption and refused to sign the instrument.

---

1. Since New England Reinsurance Company merely adopted Zoe Wong's motion for summary judgment and motion for entry of final judgment or, alternatively, for certification, the Court will refer to these motions as Zoe Wong's. However, any ruling on Zoe Wong's motions will apply with equal effect to New England Reinsurance Company.

Nevertheless, the Reeds, allegedly on the advice of their attorney, Zoe Wong, returned with the baby to their home in Opelika, Alabama, where they initiated child custody proceedings.[2] On November 19, 1984 the Alabama Court awarded the Reeds temporary custody of the child. *See Id.* at 1051. Meanwhile, Ms. Martinez had instituted a habeas corpus proceeding in Louisiana to obtain custody of the baby. On March 12, 1985 the Louisiana Court ruled that the natural mother had legal custody of the child and ordered his return from the Reeds. *Martinez v. Reed*, No. 84–19100 (Civ.D.Ct., Orleans Parish, La., Mar. 12, 1985) *affd.*, No. 4772 (La.App. 4th Cir., May 28, 1986). When Ms. Martinez sought to enforce the Louisiana habeas corpus judgment in Alabama, the Alabama Court denied registration and enforcement. *See In Re: Custody of Reed*, No. 86–3919 at 7.

Because conflicting custody decrees were issued by the State of Alabama and the State of Louisiana, the matter came before this Court to determine which ruling complied with the Federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A. On December 12, 1985, after a trial on the merits, this Court held that Louisiana had jurisdiction over the child and lifted the stay it had issued on the Reeds' appeal in the Louisiana Appellate Court. *Martinez v. Reed*, 623 F.Supp. at 1056. The Fifth Circuit affirmed this Court's ruling on February 12, 1986. *Martinez v. Reed*, 783 F.2d 1061 (5th Cir.1986). On May 28, 1986, the Louisiana habeas corpus judgment granting Ms. Martinez custody of the child was affirmed. *Martinez v. Reed*, No. 4772 (La.App. 4th Cir., May 28, 1986).

The final law suit involving the custody of the child was filed by the Reeds on March 5, 1986 in Louisiana Civil District Court. The Reeds asserted that, under Louisiana Civil Code Article 146, the best interest of the child required that they be awarded custody, care, and control of the child. On October 24, 1986, Judge Tobias ordered that "(the child) be returned to the custody of Angela although strong evidence establishes that on a strict 'best interest' test the custody of (the child) should remain with the Reeds." [3] *In Re: Custody of Reed*, No. 86–3919 at 1. Judge Tobias recognized that under Louisiana law, "[i]f a parent has executed a notarial act of surrender or a notarized document that can be reasonably be interpreted as an attempt at formal surrender, such may be the basis for terminating a parent's right to a child." *Id.* at 17 (citing *In re: J.E.C. and P.A.C.*, 487 So.2d 675 (La.App. 5th Cir.1986), *writ denied*, 491 So.2d 26 (La.1986)). However, Judge Tobias held that he had no authority to award the Reeds custody since Ms. Martinez did not sign a valid act of surrender or a defective notarial act that could be characterized as an act of surrender. The April 23rd document was not a notarial act stating that Angela surrendered to the Reeds all her rights to her child. Because Ms. Martinez only signed a custody agreement, the question of detriment to the child was not reached.

The Reeds and Ms. Martinez appear before this Court again in this tort action filed by Angela Martinez for the wrongful deprivation of her child. *Martinez v. Reed, et al.*, No. 85–1712 (E.D.La.1985). Defendants in this action are Richard and Patricia Reed, Zoe Smith Wong, Catherine Lampard[4] and the Hartford and New England Insurance Companies. The Reeds' malpractice action, filed on August 25, 1987, was consolidated with *Martinez v. Reed, et al.*, at the request of defendant, Zoe Wong.

I. *Zoe Wong's Motion for Summary Judgment*

The first issue the Court will address is whether the Reeds' malpractice claim has

---

**2.** The attorney-client relationship between the Reeds and Zoe Wong ended on June 14, 1984.

**3.** The Reeds had the exclusive custody of the child from April 23, 1984 through May 7, 1986, when Judge Tobias issued temporary joint custody orders. *In Re: Custody of Reed*, No. 86–3919 at 1. The child was surrendered to Ms.

Martinez on Friday, December 19, 1986. The Reeds, being denied visitation rights, have not seen the child since he was returned.

**4.** Catherine Lampard was hired by the Reeds to represent Ms. Martinez in the adoption proceedings.

prescribed. The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Accordingly, the substantive law of Louisiana applies to this action. Under Louisiana law, legal malpractice actions are delictual in nature and therefore governed by a one year prescriptive period. *Cherokee Restaurant, Inc. v. Pierson*, 428 So.2d 995 (La.App. 1st Cir.1983). However, if the attorney guarantees a specific result a contract action accrues and the plaintiff has ten years to file a claim. *Id.* The Reeds' complaint alleges that defendant, Zoe Wong, is liable for legal malpractice under tort and contract theories.

#### a. *The Delictual Action*

Plaintiffs allege that Zoe Wong was negligent in failing to present an act of surrender to Ms. Martinez immediately after the five day post-birth delay period required under Louisiana law had expired. Plaintiffs also claim that Zoe Wong was negligent in advising them to initiate child custody proceedings in Alabama, even though the statutory requirements for a legal adoption under Louisiana law had not been met, without adequately warning them of the emotional and legal ramifications of their actions.

Zoe Wong has moved for summary judgment on the delictual action based on *Rayne State Bank and Trust Company v. National Union Fire Insurance Company*, 483 So.2d 987 (La.1986), wherein the Louisiana Supreme Court held that prescription on a bank's malpractice action based on allegedly defective mortgages began when the bank was forced to defend a legal attack on the validity of the mortgages, regardless of future damages the bank may sustain from the invalidity of the mortgages.

In opposition, plaintiffs argue that two critical facts render the date the court in *Rayne* chose to toll prescription inapplicable to the instant suit. First, there was no ongoing litigation in *Rayne* regarding the mortgages. The lawsuit attacking the validity of the mortgages was filed on January 27, 1981. The case was settled on October 2, 1981, precluding a judicial determination on the validity of the mortgages,

the possibility of conflicting judgments, or a dispute over jurisdiction. All three of these factors were present in the custody litigation. Second, the issue in *Rayne* was whether prescription commenced when the bank had knowledge of the defect in the mortgages. Defendants in *Rayne* argued that the bank should have filed suit within one year of the date it received notice of the defects in the mortgage. The Court ruled that mere notice of the wrongful act will not commence the prescriptive period. *Id.* at 995. The Court was not faced with pegging a date for prescription to run where there was protracted litigation on the issue in controversy.

As plaintiffs note, *Rayne's* holding that the bank did not sustain damage until it was forced to defend a legal attack on the validity of the mortgages was based on La.Civ.Code Art. 3492 and *Jones v. Texas and Pacific Railway Company*, 125 La. 542, 51 So. 582 (1910), the seminal case on damages within the meaning of that Article. Because *Rayne* did not purport to change the law of prescription, but rather applied recognized legal principles on the issue, plaintiffs believe that this Court should apply *Jones* and the following cases which are more similar to the case at bar than *Rayne: Hero Lands Company v. Borello*, 459 So.2d 658 (La.App. 4th Cir.1984), *writ denied*, 462 So.2d 651 (La.1985); *Barre v. St. Martin*, 499 So.2d 607 (La. App. 5th Cir.1986), *writ denied*, 503 So.2d 14 (La.1987); and *Jordan v. Employee Transfer Corporation*, 509 So.2d 420 (La. 1987). In the alternative, plaintiffs urge the Court to apply the doctrine of contra non valentem to suspend prescription.

■ It has always been this Court's opinion that prescription on the Reeds' malpractice claim commenced on October 24, 1986, when Judge Tobias entered a final definitive judgment depriving the Reeds of the custody of the child. However, the Court felt bound by *Rayne* to hold that prescription commenced on October 19, 1984, the date Ms. Martinez filed the habeas corpus petition in a Louisiana court contesting the Reeds' custody of the child. *See* Minute Entry dated January 4, 1988. After fur-

ther reflection, the Court believes that defending a lawsuit which focuses on the interpretation of documents prepared by an attorney does not trigger prescription where that litigation fails to put the client on notice that he has a malpractice claim against his attorney. Applying this reasoning to the case at bar, Zoe Wong's motion for summary judgment must be denied.

When prescription commences on a particular cause of action is necessarily a factual issue. Prescription is not triggered until the plaintiff has actual or constructive knowledge of the tortious act, the damage, and the causal relation between the two. *Hero Lands*, 459 So.2d at 661. Where a malpractice suit is based on negligently advising a client to commence a legal struggle without adequately informing the client of the legal, financial, and emotional ramifications of his actions, it likely is not until the litigation process is completed that the client is able to assess whether the advice given to him was adequate. The litigation and payment of attorneys fees pursuant to the advice of counsel would not necessarily put the party on notice that a wrong had been committed by the attorney since both will necessarily be sustained as the client follows the attorney's advice. Likewise, where a malpractice action is based on the attorney's negligent failure to act, prescription would not commence until the client was put on notice that the attorney's conduct was tortious. Whether prior litigation concerning the validity of the attorney's work put the client on notice of his cause of action for negligently failing to act is a factual question.

*Rayne* is not dispositive of the prescription issue before the Court. It was undisputed in *Rayne* that the bank was aware of the alleged legal malpractice when the lawsuit attacking the validity of the mortgages was pending. *Rayne* simply held that a party sustains damage sufficient to commence prescription when that party incurs attorneys fees to defend a legal attack on the validity of the attorney's work. Thus, the critical question in the case at bar is not when did the Reeds sustain damage sufficient to commence prescription on their cause of action for legal malpractice, but rather when did the Reeds become aware that they had a reasonable basis to pursue a claim for legal malpractice against Zoe Wong.

The Louisiana Supreme Court recently held in *Jordan v. Employee Transfer Corporation*, 509 So.2d 420 (La.1987), that the commencement of prescription depends on the reasonableness of a plaintiff's conduct. In *Jordan*, plaintiffs sued in redhibition to rescind the sale of a house. The issue before the court was when did the Jordans discover the redhibitory vice, since they had one year from that date to file suit. The Jordans had purchased the home upon the representations of David Key, a real estate broker. Key advised the Jordans of a report prepared by Jerry Madden, a civil engineer, which concluded that the house was not structurally sound. However, Key did not tell the Jordans of a second report prepared by John Maroney, who, unlike Madden, issued his report knowing that the prior owner had difficulty with water damage to the den. Consequently, the Jordans purchased the house not knowing that water leaked into the den. After a rainstorm that ended on October 1, 1982, Ms. Jordan found the carpet in the den soaked with water. The insurance adjuster wrongly concluded that the leak was caused by a leaking flashing where the chimney met the roof. Only on December 1, 1982, after the den flooded for a second time, were the Jordans able to see water leaking through the foundation. Reasoning as follows, the Supreme Court held that the Jordans' suit, filed on December 1, 1983, was timely:

> When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. The Jordans knew there was damage on October 1, 1982, when they discovered the water in their den. However, prescription did not begin to run until they had a reasonable basis to pursue a claim against a specific defendant. This did not occur until December 1, 1982, when the plaintiffs had a reasonable basis to conclude that Key's assurances and the Madden report were incorrect.

*Id.* at 423.

Applying these principles to the instant case, the Court is of the opinion that the

Reeds were reasonable in waiting to file this legal malpractice action until Judge Tobias rendered his decision on the custody issue adverse to the Reeds. Until that time the Reeds did not have a reasonable basis to conclude that Zoe Wong's advice was negligent or that her warnings were inadequate. Nor does the Court believe that the Reeds were put on notice of their legal malpractice action for negligent advice by events which occurred prior to Judge Tobias' decision. The Reeds appear to have reasonably relied on the advice of their attorney, Zoe Wong, when they initiated child custody proceedings in Alabama. That litigation involved complex legal questions and spanned a period of one and one-half years. During that entire time the Reeds maintained custody of the child pursuant to court orders. By the time the appeal of the Louisiana habeas corpus decision was rendered, the Reeds had a valid claim that custody should be awarded to them under La.Civ.Code Art. 146 which they rightfully pursued.

Nevertheless, the Court finds that when the Reeds had notice of their cause of action against Zoe Wong for her negligent advice and failure to warn is a factual question for the jury to decide. Questions of material fact also preclude the Court from determining when the Reeds were put on notice that Zoe Wong was negligent in waiting until May 11, 1984 to present Ms. Martinez with a formal act of surrender. Accordingly, the Court will deny Zoe Wong's motion for summary judgment on the Reeds' delictual action for legal malpractice.

### b. *The Contractual Action*

Zoe Wong argues in her motion for summary judgment on plaintiffs' contract claim that plaintiffs' complaint only alleges that Zoe Wong guaranteed that "the technical formalities required by Louisiana adoption law would be met." *See* Plaintiffs' Complaint, para X. Wong cites *Gifford v. New England Reinsurance Corporation*, 488 So.2d 736, 739 (La.App. 2nd Cir.1986), for the proposition that this claim does not constitute a guarantee of a specific result. In opposition, the Reeds submit the affidavit of Mrs. Reed, which alleges that Zoe Wong told her that she "knew everything to do" with regard to the adoption and that "(the Reeds) would be able to adopt the Martinez child." *See* Affidavit of Mrs. Reed dated November 9, 1987. Plaintiffs believe that this affidavit precludes summary judgment on their contract claim. Zoe Wong asserts that the most Mrs. Reed's affidavit establishes, assuming the allegations therein are true, is that Zoe Wong warranted that her work would comply with Louisiana law.

The issue to be determined on this claim is whether the Reeds state a claim in contract against Zoe Wong. The Court believes Mrs. Reed's affidavit alleges that two types of promises were made by Zoe Wong. First, that Zoe Wong would perform the adoption properly and according to Louisiana law. This promise, if proven, is a guarantee that Zoe Wong's standard of performance would parallel that of a prudent attorney. An attorney's express promise to follow legal requirements is not a guarantee of a specific result. *Id.; Varnado v. Insurance Corporation of America*, 484 So.2d 813, 815 (La.App. 1st Cir. 1986), *writ denied*, 489 So.2d 248 (La.1986). Second, Mrs. Reed's affidavit alleges that Zoe Wong represented that "(the Reeds) would be able to adopt the Martinez child." Affidavit of Mrs. Reed dated November 9, 1987, para. 7. This promise, if proven, is more than a promise that Louisiana law would be followed. It is a promise that the adoption will occur and is a guarantee of a specific result. The Reeds are allowed ten days to amend their complaint to conform with the contract action as raised in Mrs. Reed's affidavit. Therefore, a genuine issue of material fact exists regarding Zoe Wong's representations to the Reeds rendering summary judgment inappropriate on this claim.

### II. *Zoe Wong's Motion for Certification of Legal Question Pursuant to 28 U.S.C. § 1292(b)*

Three criteria must be satisfied to certify an otherwise non-appealable legal order to the Circuit Court: (1) the issue involves a

controlling question of law; (2) there is a substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

The Court believes that the plaintiffs' contract action is not a controlling question of law as to which there is a substantial ground for difference of opinion. Since a trial will be held to determine whether Zoe Wong warranted a specific result, appellate review of the Court's ruling on plaintiffs' tort action would not materially advance the ultimate termination of the litigation.

Accordingly,

IT IS ORDERED that:

(1) The motion of plaintiffs, Richard and Patricia Reed, to reconsider is GRANTED;

(2) The Court's order of January 4, 1988 granting defendants' motion for summary judgment is VACATED.

(3) The motion of defendants, Zoe Wong and the New England Reinsurance Company, for certification of legal question is DENIED.

(4) The motion of defendants, Zoe Wong and the New England Reinsurance Company, for entry of final judgment is DENIED.