CRAWLEY, Judge.
In February 1994, Ronald Walter Edwards (the “father”) and Sharon K. Edwards (the “mother”) were divorced in Pike County, Alabama. The parties agreed that the mother should have custody of the parties’ two minor sons, subject to the father’s visitation rights. The trial court incorporated the parties’ agreement into the divorce judgment.
In June 1997, the father filed a petition to modify, alleging that a material change in circumstances had occurred that warranted a change in custody from the mother to the father. The mother filed a motion to dismiss the petition or to transfer it for want of jurisdiction, which was denied. Thereafter, the mother filed an answer and a counterclaim, requesting modification of the father’s child support obligation.
After a hearing, the trial court issued an order, transferring custody of the parties’ two minor sons from the mother to the father. The trial court stated that the father had met the “McLendon standard”[1] by “showing that an award of custody to him would materially promote the best interest and welfare of the children.” The mother filed a motion for a new trial, which was denied. The mother appeals.
First, the mother contends that the trial court committed reversible error when it declined to dismiss the father’s petition for lack of jurisdiction. The mother argues that Alabama no longer has jurisdiction of this matter because Alabama is no longer the “home state” of the minor sons.
As previously noted, the parties were divorced in Pike County, Alabama, and the divorce judgment awarded custody of the minor sons to the mother. There is no dispute that the trial court had jurisdiction to enter the original divorce judgment. Thereafter, the mother and the minor sons moved to Tallahassee, Florida. The father continues to reside in Pike County, Alabama.
This court stated the following in Webster v. Webster, [Ms. 2960985, December 5, 1997] — So.2d-,-, (Ala.Civ.App.1997):
“To the extent that the P.K.P.A. conflicts with the U.C.C.J.A., the federal statute preempts the provisions of the state statute. Flannery v. Stephenson, 416 So.2d 1084, 1038 (Ala.Civ.App.1982).
[[Image here]]
“Our supreme court took the opportunity to extensively interpret the application of the P.K.P.A. in Ex parte Blanton, 463 So.2d 162 (Ala.1985). The crux of the Blanton holding was that once jurisdiction is established in one state, that state continues to have jurisdiction under the P.K.P.A., as long as the child or one of the contestants remains in that state. Id. at 167. That court stated:
“ ‘If one or more of the above-named parties continued to reside in Louisiana at the time the Mobile court exercised its jurisdiction, the Louisiana court’s continuing jurisdiction triggered § 1738A(g) and the action of the Mobile court, even though proper under Alabama’s “home state” provision, was barred.’

“Id.”

*958 This court also stated the following in Lyon v. Lyon, 618 So.2d 127, 129 (Ala.Civ.App.1992):
“Alabama courts have ‘continuing preferred’ jurisdiction over custody matters if the initial custody determination was entered with proper jurisdiction and either the child or either parent continues to reside in Alabama.”
In light of the foregoing, the trial court in the present case clearly had jurisdiction over this matter and, thus, did not err when it denied the mother’s motion to dismiss for lack of jurisdiction.
Second, the mother argues that the trial court committed reversible error when it overruled her hearsay objection to the father’s testimony regarding statements made by the minor sons. Under Rule 802, Ala. R. Evid., hearsay is not admissible unless it falls within some recognized exception. The trial court overruled the mother’s hearsay objection and allowed the father to testify regarding the reasons the minor sons had given the father for wanting to live with him. The father testified that the minor sons told him that they wanted to live with him because they are afraid of the mother’s boyfriend.
Both the sons were questioned by the trial court, and their testimony is part of the record. Both of the sons told the trial court that the mother’s boyfriend scares them. The father’s testimony was merely cumulative and corroborative of the minor sons’ testimony. Consequently, we conclude that if the trial court did commit error when it allowed the father to testify regarding the reasons the minor sons had given for wanting to live with him, it was harmless error. Rule 45, Ala. R.App. P.
Last, the mother contends that trial court abused its discretion when it transferred custody from the mother to the father because, she says, the father failed to present evidence sufficient to meet the burden of proof imposed by Ex parte McLendon, 455 So.2d 863 (Ala.1984). In McLendon, our supreme court determined that a parent seeking to have custody provisions modified must show that a change in custody will materially promote the minor children’s welfare and best interests and that the positive good brought about by the change will offset the inherently disruptive effect of uprooting the children.
We recognize that the appellate courts presume that a trial court’s determination regarding the modification of the custody provision of a divorce judgment is correct because the trial court had the opportunity to hear the evidence and observe the witnesses and, thus, is in the best position to adjudge the best interests of the minor children. Voloshik v. Voloshik, 505 So.2d 1233 (Ala.Civ.App.1986). We further recognize that the trial court’s determination will not be disturbed on appeal unless the evidence fails to support the determination and it appears to be plainly and palpably wrong. Voloshik, 505 So.2d at 1233.
The father maintains that the evidence before the trial court demonstrated that a change in custody would materially promote the minor children’s welfare and best interests and demonstrated that the positive good brought about by the change would offset the inherently disruptive effect of uprooting the children. However, we cannot agree.
The record reveals the following pertinent facts: The mother and the minor sons moved to Tallahassee, Florida, after the divorce because the mother’s parents and brothers live there. The maternal grandparents live approximately a mile and a half from the mother’s home and are actively involved in the lives of the parties’ minor sons. The minor sons are involved in numerous activities in Tallahassee—church, school, sports. The older son has been diagnosed with ADD and is enrolled in an attention deficit disorder (“ADD”) program in the Tallahassee schools. Each son has his own room at the mother’s house in Tallahassee.
The mother meets the father at the Florida-Alabama state line on Friday evenings so that the father can exercise his weekend visitation with the minor sons. It should be noted that just before the hearing on the father’s petition to modify, the parties’ minor sons were staying with the father because it was summer visitation. The older son testified that he had been at the father’s home for *959 three weeks and that this was the first time since the divorce that he had been with his father for longer than a week.
The mother began dating soon after the divorce. Her boyfriend lives in Troy and comes to visit the mother in Tallahassee on weekends. The father argues that the mother is not setting a good example for the parties’ minor sons because the mother’s boyfriend stays overnight at the mother’s residence on weekends. The mother admitted that she and her boyfriend have a sexual relationship, but she said they do not have sex when the minor sons are present in Tallahassee. She contends that when the minor sons are present in her home, the boyfriend sleeps on the couch.
The parties’ minor sons testified that they were afraid of the mother’s boyfriend because, they said, he argues with the mother and yells at her. The mother testified that she was surprised when she learned that the minor sons were afraid of her boyfriend because, she said, her sons have always appeared to be fond of her boyfriend. The mother stated that although she and the boyfriend may argue on occasion, her boyfriend does not have a volatile temper and he is not verbally abusive.
The father has remarried. The father and the stepmother have custody of the stepmother’s eight-year-old daughter from a pri- or marriage and the father and the stepmother have a newborn baby. The father and the stepmother live in a three-bedroom, two-bath house and the parties’ minor sons have been sleeping on a pull-out sofa while visiting at the father’s house. The father and the stepmother testified that they are planning to get a larger home if they are awarded custody of the parties’ minor sons.
The father admitted that he drinks in front of his sons and that he has been drunk in front of them. The father also admitted that he was in an alcohol treatment program in 1982, but that he checked out of the program and has not sought help since. The stepmother testified that she frequently drives the father when he is picking up his sons for visitation because the father has been drinking. The older son testified that in the three weeks before the hearing, he had seen the father drunk four times.
The older son, who was 12 years old at the time of the hearing, testified that he wants to live with the father because he wants to do “boy” things (like hunting and fishing) with his father and that he does not think the mother can do those things with him. The younger son, who was six years of age at the time of the hearing, testified that he wants to live with the father because the father takes them to do more “fun stuff’ and that the father is going to take them hunting.
The mother testified that she is aware that the parties’ minor sons have said they want to live with their father, but she said they bring it up only when they have been with the father for the weekend. She further testified that she is aware that the father has promised the sons that he would take them hunting, fishing, and camping, but that the father has not kept a lot of his promises over the years.
In light of the foregoing, we conclude that the evidence does not support the trial court’s determination that the father had met the McLendon standard by “showing that an award of custody to him would materially promote the best interest and welfare of the children.” Consequently, the trial court’s judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., dissents.

. Ex parte McLendon, 455 So.2d 863 (Ala.1984).