SMITH, Justice.
These two petitions for the writ of cer-tiorari, which have been consolidated for purposes of issuing one opinion, involve an interstate dispute over custody of a minor child (“the child”); the parties claiming custody of the child are the child’s biological father, M.A. (“the father”), a resident of Nebraska, and D.B. and T.B. (“the adoptive couple”), Alabama residents who sought to adopt the child in Alabama. The Court of Civil Appeals held that the State of Nebraska had subject-matter jurisdiction to decide the child’s custody. D.B. v. M.A, 975 So.2d 927, 937 (Ala.Civ.App.2006). However, the Court of Civil Appeals held that the Nebraska judgment awarding custody of the child to the father was not enforceable in Alabama against the adoptive couple because that judgment did not comply with notice provisions of the Parental Kidnaping Prevention Act, 28 U.S.C. § 1738A (“the PKPA”), or with Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act, § 30-3B-101 et seq., Ala.Code 1975 (“the UCCJEA”). D.B., 975 So.2d at 930. We affirm.

Factual Background and Procedural History

The opinion of the Court of Civil Appeals provides the following factual background and procedural history of this case:
“On January 21, 2004, the child was born in Nebraska. Several days later, on January 25, 2004, the child was placed by his mother, M.T. (‘the mother’), who is a resident of Nebraska, into the physical custody of the adoptive couple. Five days later, on January 30, 2004, the father learned of the potential adoption. That same day, he filed notice of his intent to claim paternity and to obtain custody with the Nebraska Department of Health and Human Services. On February 2, 2004, the adoptive couple moved the child to Alabama. On February 12, 2004, the adoptive couple filed a petition for the adoption of the child in the probate court of Montgomery County (‘the probate court’). Several days later, the probate court issued an interlocutory order awarding custody of the child to the adoptive couple.
“On February 20, 2004, the father filed a petition in a Nebraska trial court seeking an adjudication of his claim of paternity and his right to custody of the child. On March 17, 2004, the father and the mother appeared at a pretrial hearing in the Nebraska trial court. Also present at the hearing was an attorney representing the adoptive couple, although he did not make an official appearance. During the hearing, the mother admitted that M.A. is the father of the child in this case. Following the hearing, the Nebraska trial court entered an order finding that it had jurisdiction over the parties and the subject matter of the case. That order further *943 noted that the father and the mother had stipulated that the father was the natural father of the child. On March 30, 2004, the father moved the Alabama probate court to stay the adoption proceedings.
“On April 7, 2004, the Nebraska trial court reaffirmed that it had jurisdiction to determine the child’s custody. On April 21, the Nebraska trial court held a trial, during which that court received testimony from the father, his mother, and the guardian ad litem appointed to protect the interests of the child. The mother was not present at the trial.
“During the trial, the father testified that, at one point, he and the mother had planned on getting married but that the mother had broken off their relationship. The father also testified that he had tried to maintain contact with the mother and wanted to participate in the upbringing of their child but that, because of a lack of cooperation from the mother, he had been unable to do so.
“The evidence introduced at trial also indicated that the mother had evidently decided, without the consent of the father, to put their child up for adoption. Before the child was born, the mother arranged to have the child adopted by the adoptive couple. The mother’s attorney apparently sent a notice of this potential adoption to the father; however, that notice was mailed to the wrong address. The mother placed an announcement about the potential adoption in a local newspaper in Nebraska; that announcement stated that the father had until five days after the last publication of the announcement, i.e., until February 12, 2004, to file notice of his intent to claim paternity and to obtain custody. As noted above, the father filed notice of his intent to claim paternity and to obtain custody of the child on January 80, 2004. On the same day as the trial, the Nebraska trial court entered a judgment stating, in part:
“ '3. All the evidence indicates [that the father] did everything he needed to do to be both the biological and actual father of the minor child, wanting to raise, take care of, and support his minor child;
“ ‘4. The evidence shows [that the father] did not abandon or neglect the minor child or [the mother] either during the pregnancy or after the minor child’s birth;
“ ‘5. All the evidence indicates [that the father] did all he needed to do to claim the paternity and custody of his minor child, and complied with all applicable Nebraska statutes;
“ ‘6. [The father] did not consent to the adoption of the minor child, and he did not relinquish his parental rights to his minor child;
“ ‘7. All the evidence indicates [that the father] is a good and decent person, and that [the father] is a fit and proper person to have the care, custody and control of his minor child;
“ ‘8. The evidence further shows [that the father] has supportive parents committed to helping [the father] raise his minor child; and
“ ‘9. This Court is legally required [to place the minor child], and it would be in the best interests of the minor child to be placed[,] in the care, custody and control of [the father].
“ ‘The Court further ORDERS, ADJUDGES and DECREES that:
“ T. [The father’s] Petition for Adjudication and Right to Custody should be, and is hereby, sustained;
“ ‘2. [The father] is adjudicated to be the natural and biological father of the minor child born on January 21, 2004; and
*944 “ ‘3. It would be in the best interests of the minor child if his physical and legal care, custody and control were awarded to [the father], and that [the father] should have the physical custody of said minor child and all rights that pertain thereto.
“ ‘IT IS SO ORDERED.’
“The Nebraska trial court supplemented that judgment six days later, adding in part:
“ ‘4. With respect to the adoption proceedings in the State of Alabama, to continue such proceedings would not be in the minor child’s best interests; and
“ ‘5. Any adoption proceedings in Alabama be dismissed and any Orders thereto be dissolved and the State of Alabama assist in returning the custody of the minor child ... to his biological and custodial parent, ... [the father], so that the [father] can obtain custody of ... [the child].’
“On April 29, the father moved to enforce the Nebraska trial court’s judgment in the probate court. The next day, the father also filed a verified objection to the adoption petition in the probate court. On May 10, 2004, the adoptive couple moved to transfer the adoption proceeding to the juvenile court of Montgomery County (‘the juvenile court’), and the probate court did so. On June 4, 2004 the adoptive couple filed in the juvenile court [case no. JU-04-593] a response to the father’s motion to dismiss the adoption action. In that response, the adoptive couple asserted, among other things, that the Nebraska judgment was invalid because they had not been served in the Nebraska proceeding.
“On May 24, 2004, the father filed in the family court of Montgomery County (‘the family court’) a request for registration and enforcement of the Nebraska judgment declaring him to be the father of the child [case no. DR-04-648].
“On June 14, 2004, the juvenile court action and the family court action were consolidated in the juvenile court. The father’s attorney sought to serve notice of the request for registration of the Nebraska judgment on the mother by certified mail, then by publication. No response was ever received from the mother. The attorney for the adoptive couple was mailed notice of the request for registration of the Nebraska judgment, and he later admitted at a hearing on a Rule 60(b), Ala. R. Civ. P., post-judgment motion that he, as well as the adoptive couple, was aware of the registration proceeding.
“The juvenile court judge who ultimately presided over this case held a hearing on whether an Alabama court could properly exercise jurisdiction over this matter, and on September 22, 2005, the juvenile court entered a judgment wherein it stated, in part:
“ ‘3. That the State of Alabama hereby declines jurisdiction of the case, finding that the State of Nebraska has never relinquished jurisdiction and that jurisdiction is proper in the State of Nebraska, County Court of Madison, Nebraska.
“ ‘4. That the Juvenile Court Clerk shall immediately transfer this matter to the State of Nebraska, Madison County Court for further proceedings in this matter. The Court notes that the issues of termination of parental rights and adoption, if any, may be properly heard by the Nebraska Court.
“ ‘5. That a copy of this Order be transmitted to the Honorable Reese McKinney, Montgomery County, Alabama Judge of Probate for his deter *945 mination as to whether the pending adoption ease should be stayed, held in abeyance or dismissed without prejudice.’
“On September 30, 2005, the adoptive couple filed a Rule 59, Ala. R. Civ. P., postjudgment motion; on October 3, they filed a notice of appeal (appeal no. 2050034). Citing the adoptive couple’s appeal pending before this court, the juvenile court denied the Rule 59 post-judgment motion on the basis that it was ‘moot.’ The adoptive couple subsequently filed a Rule 60(b), Ala. R. .Civ. P., postjudgment motion....
“On December 8, 2005, while the adoptive couple’s Rule 60(b) motion was pending in the juvenile court, the Alabama Department of Human Resources (‘DHR’), on behalf of the State, moved to intervene, specifically noting that the State has an interest in the enforcement of the UCCJEA. DHR sought to intervene for the purpose of requesting that the juvenile court enforce the Nebraska judgment and order law-enforcement officials to take the child into custody and then turn him over to the custody of the father. On December 13, 2005, the juvenile court granted DHR’s motion to intervene.[1]
“The juvenile court conducted a hearing on the adoptive couple’s Rule 60(b) motion, and it ultimately denied that motion on December 20, 2005. The juvenile court’s judgment on the Rule 60(b) motion provided, in part:
[[Image here]]
“ ‘A review of the documents filed in both the [family] court and the [juvenile] court, now consolidated, clearly shows that prior to Judge Anderson’s registration of the Nebraska custody Order, the Nebraska Interstate Compact on Placement of Children (I.C.P.C.) administrator had requested the return of the child from the Alabama I.C.P.C. administrator. Attached hereto is a copy of that request dated May 17, 2004, which reads,
“ . According to the interstate compact on the placement of children ... article V (copy attached), [Nebraska] is requesting that the [Alabama] I.C.P.C. instruct the local attorney or supervising agency to cooperate in returning the child to [Nebraska]. The father has claimed paternity and been awarded custody. [Nebraska] court orders attached. Please notify Mary Dyer today, May 17, 2004, of the plan to return the child. The father will be in Atlanta, Georgia, on Wednesday, May 19th. Arrangements can be made for the child’s return to him in Atlanta by contacting his attorney, Melissa Wentling at [address omitted].”
“ ‘In addition, attached is the affidavit of Mary Dyer filed with this Court [on] June 25, 2004 in support of the natural father’s Motion to Dismiss and for Enforcement filed by counsel for the father [that] clearly sets out the timeline and evidences at paragraph # 3 that the adoptive couple were required to sign an executed “At-Risk Placement” document which provided that in the event the birth father came forward or asserted his interest in the child, even after the time of placement, that the State of Alabama could require these adoptive parents to re *946 turn the child to the State of Nebraska for further determination of the rights of the putative father. Mrs. Dyer’s affidavit at paragraph # 6 states that the Nebraska I.C.P.C.’s position is that the natural father had complied with all applicable Nebraska law pertaining to claiming paternity and seeking custody of ... [the child].’
“(Emphasis added.)
“The juvenile court ultimately concluded that Nebraska is the proper jurisdiction to determine the matter of the child’s custody; however, despite stating that the Nebraska judgment was properly registered in Alabama, the juvenile court did not specifically order the return of the child to the father. On December 28, 2005, the adoptive couple appealed the denial of their Rule 60(b) motion (appeal no. 2050277).”
D.B., 975 So.2d at 930-35 (capitalization in original; footnotes omitted).
The adoptive couple and the father each filed a petition for a writ of certiorari. In case no. 1060077, this Court granted the adoptive couple’s petition to determine whether the Court of Civil Appeals erred in holding: (1) that Alabama may not assert jurisdiction in accordance with the home-state jurisdiction provision found in the PKPA, 28 U.S.C. § 1738A(c)(2)(A), or with any other jurisdictional provision stated in § 1738A(c)(2)(B)-(D); and (2) that Alabama must defer to the Nebraska custody proceedings in this custody dispute, even though the Court of Civil Appeals held that the Nebraska judgment is not enforceable against the adoptive couple. In case no. 1060529, this Court granted the father’s petition to determine whether the Court of Civil Appeals erred in refusing to enforce the judgment of the Nebraska court placing custody of the child with the father.

Discussion

I.

The first question we must consider is which state — -Nebraska or Alabama — has subject-matter jurisdiction to decide this child-custody dispute. The adoptive couple argues that the Court of Civil Appeals erred in affirming the juvenile court’s decision that Nebraska is the appropriate state to make a custody determination as to the child. The adoptive couple maintains that Alabama was the first state to issue a custody determination as to the child under the PKPA and that “[a] correct application of the PKPA to the undisputed facts of this case clearly establishes that Alabama has continuing preferred jurisdiction under 28 U.S.C. § 1738A(c)(1) and (2)(B).” (Adoptive couple’s brief in case no. 1060077, p. 14.)
As noted, the adoptive couple initiated the adoption proceeding in Alabama on February 12, 2004, in the Montgomery County Probate Court, and on February 17, 2004, that court issued an interlocutory order awarding “custody” of the child to the adoptive couple. Under the PKPA, a “custody determination” is “a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications.” 28 U.S.C. § 1738A(b)(3). Therefore, the adoptive couple argues that the interlocutory order of the Montgomery County Probate Court meets the definition of a “custody determination” in the PKPA.
Even if the interlocutory order of the probate court is a “custody determination” under the PKPA, however, it still must be “consistent with the provisions of [the PKPA].” Among other things, that means the assertion of jurisdiction by the probate court must meet one of the five “conditions” in § 1738A(c)(2)(A)-(E). Section 1738A(c)(2) provides:
*947 “(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if:
[[Image here]]
“(2) one of the following conditions is met:
“(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child’s home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
“(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child’s present or future care, protection, training, and personal relationships;
“(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because the child, a sibling, or parent of the child has been subjected to or threatened with mistreatment or abuse;
“(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody or visitation of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
“(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.”
(Emphasis added.)
In the brief submitted to this Court, the adoptive couple addresses two of those conditions: § 1738A(c)(2)(A) and § 1738(c)(2)(B). The adoptive couple argues that the PKPA recognizes the order of the probate court as a proper exercise of jurisdiction because, the adoptive couple contends, “there is no ‘home state’ as defined by 28 U.S.C. § 1738A(b)(4) .... [and] Alabama satisfies the ‘best interest-significant connection’ test of 28 U.S.C. § 1738A(c)(2)(B).” Moreover, the adoptive couple argues that “[b]ecause there is no ‘home state,’ no other state would have jurisdiction under 28 U.S.C. § 1738A(c)(2)(A).”
However, in contending that the child has no “home state” under the PKPA, the adoptive couple presents an argument they did not offer to the Court of Civil Appeals. In that court, the adoptive couple argued that Alabama was the “home state” as defined by § 1738A(b)(4), and, of the five conditions listed in § 1738A(c)(2)(A)-(E), the adoptive couple cited only § 1738A(c)(2)(A), the condition addressing home-state jurisdiction.
The Court of Civil Appeals rejected the adoptive couple’s argument that Alabama has home-state jurisdiction under the PKPA. The Court of Civil Appeals stated:
“The adoptive couple argue in their brief to this court that Alabama is the child’s home state and that the probate court’s interlocutory order of February 17, 2004, is a child-custody determina *948 tion under the PKPA. The adoptive couple claim that the juvenile court’s ‘refusal’ to recognize Alabama as the child’s home state, and to give effect to the probate court’s interlocutory order, was error because it led to the court’s conclusion that Alabama did not have jurisdiction.
“However, it appears that under the PKPA Alabama is not the child’s home state and, furthermore, that Alabama would not have jurisdiction to determine the child’s custody under the PKPA. The PKPA defines ‘home state’ as:
“ ‘(4) “[H]ome State” means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period.’
“28 U.S.C. § 1738A(b)(4). In arguing that Alabama is the home state of the child, the adoptive couple also rely upon 28 U.S.C. § 1738A(e), which provides, in part:
“‘(c) A child custody or visitation determination made by a court of a State is consistent with the provisions of this section only if—
“ ‘(1) such court has jurisdiction under the law of such State; and “ ‘(2) one of the following conditions is met:
“ ‘(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child’s home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State.’
“(Emphasis added.) In this case, the child was born in Nebraska; the child was moved to Alabama when he was only 11 days old, and he clearly did not live with the adoptive couple from birth. Therefore, Alabama cannot claim home-state jurisdiction under the PKPA.”
D.B., 975 So.2d at 936-37. Although the adoptive couple had not argued that Alabama’s assertion of jurisdiction met one of the other conditions stated in § 1738A(e)(2)(B)-(E), the Court of Civil Appeals additionally stated that “under the facts of this case, an Alabama court cannot invoke jurisdiction under any of the other provisions of 28 U.S.C. § 1738A.” D.B., 975 So.2d at 937.
The Court of Civil Appeals having rejected the argument that Alabama has home-state jurisdiction under the PKPA, the adoptive couple now argues to this Court that there is no home state under the PKPA but that the probate court’s assertion of jurisdiction is consistent with the best interest-significant connection test of § 1738A(c)(2)(B). Thus, the adoptive couple argues that the judgment of the Court of Civil Appeals should be reversed based on a position that, in addition to not being argued to that court, is the opposite of what the adoptive couple argued to that court.
This Court has stated that it “ ‘cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the [lower] court.’ ” Crutcher v. Wendy’s of North Alabama, Inc., 857 So.2d 82, 97 (Ala.2003) (quoting Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992)). Even so, however, we do not agree with the adoptive couple’s asser *949 tion that there is no home state under § 1738A(c)(2)(A).
As noted, the biological father filed an action in Nebraska on February 20, 2004, seeking custody of the child. Because the father’s action was filed eight days after the adoptive couple had filed their petition for adoption in the Montgomery County Probate Court and three days after the Montgomery County Probate Court had issued an interlocutory order giving the adoptive couple custody of the child, the adoptive couple contends that the PKPA recognizes Alabama as having exclusive jurisdiction for determining the child’s custody and that § 1738A(g) prohibited Nebraska from exercising jurisdiction over the father’s later filed action. Section 1738A(g) provides:
“A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.”
Although the Nebraska action was filed after the Montgomery County Probate Court issued the interlocutory order, § 1738(g) prohibited Nebraska from exercising jurisdiction in the father’s later filed custody action only if the Montgomery County Probate Court “[was] exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.” (Emphasis added.)
To be “consistent with the provisions of’ the PKPA, the Montgomery County Probate Court’s exercise of jurisdiction must meet one of the five conditions stated in § 1738A(c)(2)(A)-(E). As noted, the adoptive couple offers to this Court the condition stated in § 1738A(c)(2)(B)—that is, jurisdiction based on “significant connections” or the “best interest of the child.” However, the PKPA prefers home-state jurisdiction under § 1738A(c)(2)(A); therefore § 1738A(c)(2)(B)(i) places a restriction on a state’s ability to exercise significant-connection jurisdiction. For a state to exercise jurisdiction under § 1738A(c)(2)(B), it must “appear[] that no other State would have jurisdiction under subpara-graph (A).” Thus, if a state asserts home-state jurisdiction under § 1738A(c)(2)(A), then another state cannot assert significant-connection jurisdiction under § 1738A(c)(2)(B). See Martinez v. Reed, 623 F.Supp. 1050, 1056 (E.D.La.1985) (“Although the June 1984 proceeding in Alabama was filed first, before the natural mother filed her suit in Louisiana on October 19, 1984, the Alabama court’s child custody determination was not made consistently with the provisions of the federal act and, thus, the [adoptive couple’s] priority in filing their action does not outrank the natural mother’s suit in Louisiana.... [T]he natural mother’s suit was filed within six months of the child’s birth in Louisiana. Thus, Louisiana’s ‘home status’ cannot be destroyed by the [adoptive couple’s] removal of the child [to Alabama] for custody purposes.”); Atkins v. Atkins, 308 Ark. 1, 4-7, 823 S.W.2d 816, 818-19 (1992) (affirming an Arkansas trial court’s refusal to give full faith and credit to a custody determination from a Louisiana court; even though the Louisiana custody action had been filed before the custody action was filed in Arkansas, the court noted that, as the home state, Arkansas had exclusive jurisdiction under the PKPA; therefore Louisiana could not assert significant-connection jurisdiction); Garrett v. Garrett, 292 Ark. 584, 587-89, 732 S.W.2d 127, 128-30 (1987) (applying the same principle); State v. District Court of the Fifth District, 831 P.2d 233, 240 (Wyo.1992) (“A *950 foreign state which is neither a decree state nor a home state may not assume jurisdiction in contravention to the [Wyoming Uniform Child Custody Jurisdiction Act] and PKPA preference for ‘home state’ jurisdiction.”). See also Roger M. Baron, Federal Preemption in the Resolution of Child Custody Jurisdiction Disputes, 45 Ark. L.Rev. 885, 893-94 (1993) (“The PKPA also utilizes the ‘significant connection’ and ‘substantial evidence’ criteria as a basis for jurisdiction, but only if there is no home state. When a child’s home state can be established, the PKPA grants exclusive jurisdiction to that state.” (footnotes omitted; emphasis added)); Andrea S. Charlow, Jurisdictional Gerrymandering and the Parental Kidnapping Prevention Act, 25 Fam. L.Q. 299, 308 (1991) (“The PKPA ... does not allow resort to the ‘significant connection’ test unless there is no home state.”).
A state may exercise home-state jurisdiction if the state is the child’s home state at the time the custody action is filed. § 1738A(c)(2)(A)(i). In addition, however, a state may exercise home-state jurisdiction under § 1738A(c)(2)(A)(ii), which provides:
“A child custody ... determination made by a court of a State is consistent with the provisions of this section only if ... such State ... (ii) had been the child’s home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State .... ”
(Emphasis added.)
Thus, under § 1738A(c)(2)(A)(ii), a state that has home-state status remains the home state for up to six months after the child leaves that state if the following two conditions exist: (1) the reason for the child’s absence from the state is that a “contestant” has removed the child from the state; and (2) “a contestant continues to live in” the state. Id. See also Martinez, 623 F.Supp. at 1056. In this case, Nebraska has home-state jurisdiction in accordance with § 1738A(c)(2)(A)(ii).
It is undisputed that the child was born in Nebraska and that the child lived there with the biological mother until the child was approximately 11 days old. Thus, for approximately the first 11 days of the child’s life, Nebraska met the definition of “home state” provided in § 1738A(b)(4). Id. (“ ‘home State’ means ... in the case of a child less than six months old, the State in which the child lived from birth with [his parents, a parent, or a person acting as parent]”). The reason for the child’s absence from Nebraska is that the adoptive couple removed the child from that state. The adoptive couple meets the PKPA definition of “contestant,” because they “claim a right to custody ... of [the] child.” § 1738A(b)(2). Finally, the father, who also is a “contestant” under the PKPA, continues to reside in Nebraska. Accordingly, under § 1738A(c)(2)(A)(ii) and § 1738A(b)(4) of the PKPA, Nebraska was the home state at the time the adoptive couple removed the child from Nebraska. Therefore, for six months after the adoptive couple removed the child from Nebraska, Nebraska remained the home state under the PKPA.
By filing a custody action in Nebraska on February 20, 2004, the father invoked Nebraska’s home-state jurisdiction under the PKPA, because he commenced a proceeding within six months of the adoptive couple’s removal of the child from Nebraska. Consequently, under the PKPA, any claim of significant-connection jurisdiction in the Montgomery County Probate Court is inferior to Nebraska’s home-state jurisdiction; because the Nebraska action was *951 commenced within six months of the child’s removal from Nebraska, it makes no difference that the Nebraska action was commenced after the Montgomery County Probate Court had issued an interlocutory order awarding custody to the adoptive couple. § 1738A(c)(2)(B); Martinez, 623 F.Supp. at 1056; Atkins, supra; Garrett, supra. See also Martinez, 623 F.Supp. at 1055 (“[T]he mere filing of an action is not an event giving Alabama absolute and interminable jurisdiction”). Accordingly, the Court of Civil Appeals did not err in affirming the judgment of the juvenile court holding that Nebraska has subject-matter jurisdiction to adjudicate the child-custody dispute between the adoptive couple and the father.[2]

II.

A

Because the PKPA recognizes Nebraska as having exclusive subject-matter jurisdiction to determine the issue of custody of the child, the next issue is whether the Nebraska custody determination of April 21, 2004, is enforceable against the adoptive couple. The parties agree that because the adoptive couple had physical custody of the child when the April 21, 2004, order was entered the adoptive couple was entitled to notice of the Nebraska proceedings. See 28 U.S.C. § 1738A(e); § 30-3B-303(a), Ala.Code 1975; § 30-3B-205, Ala.Code 1975; § 43-1242, Neb.Rev. Stat. The parties appear to agree that the adoptive couple had actual notice of the Nebraska proceedings, although the record does not indicate when they received that notice. D.B., 975 So.2d at 932 (indicating that an attorney for the adoptive couple was present at a hearing in the Nebraska proceeding but did not make an official appearance). Finally, the parties agree that no attempt was made to serve the adoptive couple with process in the Nebraska proceedings.
The parties disagree, however, on whether actual notice of the Nebraska proceedings was sufficient notice to the adoptive couple. The father contends that actual notice of the Nebraska proceedings was sufficient, but the adoptive couple ar *952 gues that they were entitled to service of process.
The Court of Civil Appeals addressed this issue as follows:
“We begin our analysis with Alabama’s version of the UCCJEA, which states in part:
“ ‘(a) A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter.’
“§ 30-3B-303, Ala.Code 1975 (emphasis added). Furthermore, the relevant portions of § 30-3B-205, Ala.Code 1975, provide:
“ ‘(a) Before a child custody determination is made under this chapter, notice and an opportunity to he heard in accordance with the standards of Section 30-3B-108 must be given to all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child.’
“(Emphasis added.) The adoptive couple point out that Nebraska has also adopted the UCCJEA, and its corresponding statutes provide almost identical terms. For example, § 43-1242, Neb.Rev.Stat., provides:
“ ‘(a) Before a child custody determination is made under the Uniform Child Custody Jurisdiction and Enforcement Act, notice and an opportunity to be heard in accordance with the standards of section ⅛3-1233 shall be given to all persons entitled to notice under the law of this state as in child custody proceedings between residents of this state, any parent whose parental rights have not been previously terminated, and any person having physical custody of the child.’
“(Emphasis added.) Furthermore, the PKPA requires:
“ ‘(e) Before a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.’
“28 U.S.C. § 1738A(e). In all these statutes, ‘physical custody’ is defined to mean the ‘physical care and supervision of a child,’ § 30-3B-102(14), Ala.Code 1975, and § 43-1227(14), Neb.Rev.Stat., or the ‘actual possession and control of a child.’ 28 U.S.C. § 1738A(b)(7). Although it appears that the adoptive couple had actual notice of the Nebraska proceeding, given that one of their attorneys was present, nothing in the record indicates that the adoptive couple were properly served with notice of that proceeding. Additionally, the adoptive couple’s attorney who was present in the Nebraska proceeding never made an official appearance, and there is no indication in the record that he participated in the proceeding in any way.
“This court has previously held that when another state enters a custody order without providing proper notice to a relevant party, or without giving that party a reasonable opportunity to be heard, such an order was not made in accordance with the PKPA. Ex parte Raywood, 549 So.2d 103, 104 (Ala.Civ.App.1989). When an order is not made *953 in accordance with the PKPA, it is ‘not entitled to full faith and credit by the courts of Alabama.’ Id. Moreover, our supreme court has observed that ‘neither the Full Faith and Credit Clause of the United States Constitution, nor any legislation under its authority, entitles a child custody [judgment] entered by a court lacking in personam jurisdiction over affected parties, to extraterritorial effect.’ Ex parte Dean, 447 So.2d 733, 737 (Ala.1984)(citing May v. Anderson, 345 U.S. [528,] 543 (1953), and Kulko v. Superior Court of California, 436 U.S. 84, 91 (1978)).
“In this case, the Nebraska judgment does not comply with the requirements of the PKPA. Additionally, Alabama’s statutes provide that a foreign state’s judgment shall be recognized and enforced only ‘if the [foreign state’s] court exercised jurisdiction in substantial conformity with [Alabama’s version of the UCCJEA] or the determination was made under factual circumstances meeting the jurisdictional standards of [Alabama’s version of the UCCJEA].’ § 30-3B-303. It is evident that the Nebraska judgment also does not comply with the requirements of Alabama’s version of the UCCJEA. Finally, the Nebraska judgment appears to not comply with Nebraska’s version of the UCCJEA in regard to providing notice to the adoptive couple.
“We note that to the extent the Nebraska judgment concerned the father’s paternity of the child, no notice was specifically required to be given to the adoptive couple under the above-referenced Nebraska statutes. However, the Nebraska judgment purported to award custody of the child to the father, and thus the adoptive couple were entitled to proper notice and service of process. The lack of proper notice and service of process in this context means that a court does not obtain personal jurisdiction over a respondent. See generally, Nelson v. Robinson, 154 Neb. 64, 70, 46 N.W.2d 892, 895 (1951) (noting that Nebraska has mandatory explicit statutory provisions providing for service of process and when service did not meet those requirements the trial court did not obtain jurisdiction over the defendant).
“Therefore the Nebraska judgment was entered without personal jurisdiction over the adoptive couple, and although Nebraska has proper subject-matter jurisdiction over this matter, the Nebraska judgment need not be enforced in this state.”
D.B., 975 So.2d at 938-40.
We agree with the Court of Civil Appeals on this issue. The father' has not shown that the notice requirements under either the UCCJEA or the PKPA were met before the Nebraska custody determination was made.
The father argues that actual notice is sufficient notice under Nebraska law. Specifically, he contends that § 43-1233, Neb.Rev.Stat., does not require that notice be given by service of process. Instead, he essentially argues that any means of giving notice is permissible so long as actual notice is achieved. We disagree.
Section 43-1233(a), Neb.Rev.Stat., provides: *954 Emphasizing the word “may” in the phrase “may be given” in the first sentence of § 43-1233(a), the father argues that service of process is permissive, not mandatory. In the second sentence of § 43-1233(a), he places the following emphasis— “Notice must be given in a manner reasonably calculated to give actual notice ” — to argue that actual notice is sufficient notice under Nebraska law.
*953 “Notice required for the exercise of jurisdiction when a person is outside this state may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective.”
*954 If the father’s construction of § 43-1233(a) is correct, however, the first sentence of the statute is superfluous; that is, if the Nebraska legislature intended to allow any means of notice to suffice so long as actual notice is given, it would be meaningless to also authorize service of process in accordance with Nebraska law or with the law of the state in which the service is made. This Court has held: “ ‘ “A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.” ’ ” Ex parte Wilson, 854 So.2d 1106, 1110 (Ala.2002) (quoting Ex parte Welch, 519 So.2d 517, 519 (Ala.1987), quoting in turn 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 46.06 (4th ed.1984)).
Construing the first sentence of § 43-1233(a) as authorizing notice only by “a manner prescribed by the law of [Nebraska] for service of process or by the law of the state in which the service is made” gives effect to both the first and the second sentences. Under that construction, the second sentence limits or qualifies what the first sentence authorizes. Thus, whatever means of service of process is used, whether under Nebraska law or the law of the state in which service is made, it must be “reasonably calculated to give actual notice.” In addition, “if other means of service are not effective,” then the second sentence authorizes service by publication.[3]
Even more important than whether the notice requirements of Nebraska were met, however, is whether the notice requirements of the PKPA were met.[4] To be enforceable in Alabama, the Nebraska custody determination ultimately would have to comply with § 1738A(e) of the PKPA, which provides: “Before a child custody or visitation determination is made, reasonable notice and opportunity to *955 be heard shall be given to ... any person who has physical custody of a child.”
The father asserts that “[i]t is clear from the plain language that actual notice is sufficient to satisfy the notice requirements of the PKPA.” (Father’s brief, p. 31.) To support that assertion, the father cites Martinez v. Reed, 490 So.2d 303 (La.Ct.App.1986); Ciotola v. Fiocca, 86 Ohio Misc.2d 24, 684 N.E.2d 763 (Ohio Com.Pl.1997); and Crabbe v. Kissell, No. FA-01-0727774 (Conn.Super.Ct., Nov.16, 2001) (unpublished decision). As additional, persuasive authority, the father cites Brooke v. Willis, 907 F.Supp. 57, 60 (S.D.N.Y.1995).
However, the cases cited by the father do not hold that actual notice — without any attempt at service of process — is sufficient to satisfy the requirement of the PKPA that “reasonable notice and opportunity to be heard” be given to the adoptive couple. Martinez, 490 So.2d at 306-07 (holding that notice requirements of the Uniform Child Custody Jurisdiction Act were satisfied when service was made on respondents by certified mail and respondents had actual notice of the proceedings); Ciotola, 86 Ohio Misc.2d at 35, 684 N.E.2d at 770-71 (rejecting claim of inadequate notice; respondent was served by mail and had actual notice of proceedings before she was served by mail); Crabbe (rejecting claim of inadequate notice; attempt was made to serve respondent at her last known address and she received actual notice); Brooke, 907 F.Supp. at 60 (rejecting claim of inadequate notice; “several attempts were made by Federal Marshals and by [the] Petitioner to personally serve Respondent and to mail her the relevant papers at her last two known New York addresses” but “were unsuccessful because of Respondent’s evasive tactics”; in addition, the petitioner claimed to have informed the respondent of the proceedings). The father in this case does not assert that any attempt was made to serve the adoptive couple with notice of the Nebraska proceedings; therefore, the cases on which the father relies are distinguishable. Consequently, the father has not demonstrated that the Court of Civil Appeals erred in holding that under the PKPA the adoptive couple did not receive adequate notice of the Nebraska proceedings.

B.

Our holding in Part II.A recognizes that the Nebraska custody determination cannot be enforced against the adoptive couple because they were not adequately notified of the Nebraska proceedings. However, the adoptive couple also insists that the lack of adequate notice means the Nebraska child custody proceeding itself is void. We disagree.
As noted in Part I of this opinion, the PKPA recognizes Nebraska as having exclusive subject-matter jurisdiction for proceedings to be brought to determine the child’s custody, because Nebraska is the home state under § 1738A(c)(2)(A)(ii). Therefore, § 1738A(c)(2)(B) and § 1738A(g) prohibit Alabama from exercising significant-connection jurisdiction concurrently with the State of Nebraska over the subject matter of the child’s custody.
The prohibition in § 1738A(g) is a prohibition on concurrent proceedings. Accordingly, for § 1738A(g) to apply as a bar to concurrent proceedings, there does not have to exist a child-custody determination that satisfies the PKPA’s notice requirement stated in § 1738A(e)—that is, the prohibition stated in § 1738A(g) could apply when there has been no child-custody determination in the first state. Section 1738A(g) provides:
“(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination com *956 menced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.”
(Emphasis added.)
In this case, proceedings to determine the child’s custody have been initiated in Nebraska and in Alabama. Because Nebraska is the home state under the PKPA, it has preferred jurisdiction under the PKPA, even though an enforceable custody determination has not yet emerged from those proceedings. Consequently, Alabama cannot exercise significant-connection jurisdiction. See Wachter v. Wachter, 439 So.2d 1260, 1264-66 (La.Ct.App.1983) (holding that Louisiana could not exercise significant-connection jurisdiction because proceedings had been commenced in the home state of New Jersey; however, the custody determination by the New Jersey court could not be enforced because the notice requirement of § 1738A(e) had not been met).[5]

Conclusion

The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
COBB, C.J., and SEE, LYONS, WOODALL, and PARKER, JJ., concur.
STUART, SMITH, and BOLIN, JJ., concur specially.
MURDOCK, J., recuses himself.

. Although not named as a party to the appeal in the Court of Civil Appeals or to the proceedings in this Court, DHR filed a brief in both the Court of Civil Appeals and in this Court; the cover of each of those briefs is green. See Rule 28(h), Ala. R.App. P. ("the cover of the brief of ... an intervenor or amicus curiae [must be] green”).

. Our decision is consistent with one of the purposes of the PKPA as stated by Congress in § 7(c) of the Parental Kidnaping and Prevention Act of 1980, Pub.L. No. 96-611, 94 Stat. 3566:
"(c) The general purposes of [the PKPA] are to — ,
[[Image here]]
“(6) deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards.”
(Emphasis added.)
As one commentator has noted:
"The third purpose of the [PKPA] was to reduce the temptation the UCCJA [Uniform Child Custody Jurisdiction Act] created for litigants to race to the courthouses of different states when filing petitions for initial custody or visitation awards. Section 6(a) of the [UCCJA] barred the exercise of jurisdiction in the second of two cases that were both commenced consistently with UCCJA standards, even if the first case was based only on section 3(a)(2) 'significant connections’ and 'substantial evidence’ jurisdiction, while the second case was based on 'home state’ jurisdiction. This provision created an incentive for both parties to begin litigation in their respective states as early as possible.
"Section 1738A reduced the number of cases with such an incentive, by providing that the federal bar on exercising jurisdiction protected a prior, pending case based on section 3(a)(2) jurisdiction only if the child had no 'home state' when that case was commenced. Thanks to this federal provision, a race to courthouses for an initial proceeding was invited only when no home state existed.”
Russell M. Coombs, Child Custody and Visitation by Non-Parents Under the New Uniform Child Custody Jurisdiction and Enforcement Act: A Rerun of Seize-and-Run, 16 J. Am. Acad. Matrim. Law. 1, 57 (1999) (emphasis added).

. In addition, construing § 43-1233, Neb. Rev.Stat., as requiring service of process is consistent with the decision cited by the Court of Civil Appeals, Nelson v. Robinson, 154 Neb. 64, 70, 46 N.W.2d 892, 895 (1951), for the proposition that “Nebraska has mandatory explicit statutory provisions providing for service of process and when service [does] not meet those requirements [a] trial court [does] not obtain jurisdiction over the defendant,” 975 So.2d at 939, as well as with the decision cited by the adoptive couple, Thornton v. Thornton, 13 Neb.App. 912, 929, 704 N.W.2d 243, 256 (2005) (quoting Anderson v. Autocrat Corp., 194 Neb. 278, 231 N.W.2d 560 (1975)), for the proposition that “[s]tatutes prescribing the manner of service of summons are mandatory and must be strictly complied with.”

. In the event the Nebraska notice requirements conflicted with those of the PKPA, the PKPA, as federal law, would control. See Blankenship v. Blankenship, 534 So.2d 320, 321 (Ala.Civ.App.1988) ("In our application of these two statutes, we have held that in areas of conflict between the two on matters of jurisdiction the federal provision — the P.K.P.A. — preempts Alabama's version of the U.C.C.J.A.”). See also U.S. Const. art. VI, cl. 2 (“This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' ’).

. The final contention of the father is that his "liberty interest,” protected by the Due Process Clause of U.S. Const. amend. XIV, requires Alabama to enforce the Nebraska judgment. That claim, however, is resolved by our conclusion that, because the notice requirement of the PKPA was not met, Alabama does not have to enforce the Nebraska judgment.