BRYAN, Judge,
dissenting.
It is well-established under Alabama law that “ ‘[a]t some point, ... the child’s need for permanency and stability must overcome the parent’s good-faith but unsuccessful attempts to become a suitable parent.’ ” T.B. v. Cullman County Dep’t of Human Res., 6 So.3d 1195, 1202 (Ala.Civ. App.2008) (quoting M.W. v. Houston County Dep’t of Human Res., 773 So.2d 484, 487 (Ala.Civ.App.2000)); M.A.J. v. S.F., 994 So.2d 280, 291 (Ala.Civ.App. 2008); J.W.M. v. Cleburne County Dep’t of Human Res., 980 So.2d 432, 440 (Ala.Civ. App.2007); and Talladega County Dep’t of Human Res. v. M.E.P., 975 So.2d 370, 374 (Ala.Civ.App.2007). Additionally,
“ ‘[ejvery child has an interest in a safe and permanent home environment *118 because stability is essential to a child’s physical, mental and emotional development. As one commentator noted:
“ ‘ “Children are not static objects. They grow and develop, and their proper growth and development require more than day-to-day satisfaction of their physical needs; Their growth and development also require day-to-day satisfaction of their emotional needs, and a primary emotional need is for permanence and stability. Only when their emotional needs are satisfied can children develop the emotional attachments that have independent constitutional significance. A child’s need for permanence and stability, like his or her other needs, cannot be postponed. It must be provided early.”
“ ‘Furthermore, once the child and adoptive parents have developed a stable home environment, removal from that environment may be physically, emotionally and psychologically detrimental to the child’s development....’”
Ex parte D.B., 975 So.2d 940, 957 (Ala. 2007) (Bolin, J., concurring specially) (quoting Kimberly Barton, Who’s Your Daddy?: State Adoption Statutes and the Unknown Biological Father, 32 Cap. U.L.Rev. 113, 143 (2003)) (emphasis added).
In this case, the father left this country to return to Guatemala on July 31, 2006. It appears that the father was well-intentioned in his desire to return to Guatemala in order to obtain a visa and that his failure to return to this country in a timely manner was not caused by any intentional or negligent act on his part; nonetheless, the father had been absent from this country — and, more importantly, from the children — for 78 days when DHR filed the dependency petition and picked up the children on October 17, 2006.[24] The father had been absent from the children for 108 days when the children were placed into foster care on November 16, 2006. Additionally, the father had been absent from the children for 171 days when DHR petitioned to terminate his parental rights on January 18, 2007. Furthermore, the father had been absent from the children for 217 days when the juvenile court entered the judgment terminating his parental rights on March 5, 2008. Moreover, the father had been absent from the children for 284 days when he finally returned to Alabama on May 11, 2007; by that time the children had been in the care of persons other than the father and the mother for almost six months.
Simply put, the father’s prolonged absence from the children — an absence that, as the evidence indicates, the father could never place a definitive ending date upon — had been indefinitely postponing the children’s need for permanency and stability. Based on the information that DHR had at the time it petitioned to terminate the father’s parental rights, DHR could have had no reasonable expectation that the father would be returning to this country within the near future. The children could have remained in a position of *119 precarious uncertainty for weeks, months, or perhaps years longer while awaiting the resolution of the father’s visa problems. It is unreasonable to suggest that Alabama law may be interpreted to support such a result. Focusing solely on a parent’s “good-faith” efforts while giving no consideration to the children’s need for permanency and stability stands contrary to Alabama law. See T.B., supra. A trip that was to have lasted between 20 and 60 days had already stretched to more than 170 days by the time DHR petitioned to terminate the father’s parental rights. I believe that more than enough time had passed at that point to support a conclusion that the children’s need for permanency and stability had overcome the father’s “ ‘good-faith but unsuccessful attempts to become a suitable parent’ ” to the children. T.B., 6 So.3d at 1202. On that basis, I conclude that the juvenile court’s judgment terminating the father’s parental rights is due to be affirmed. Therefore, I respectfully dissent.
Furthermore, because I would affirm the juvenile court’s judgment for the reasons expressed in this dissent, I would grant rehearing. Thus, I also dissent from the overruling of the application for rehearing.

. As noted in the main opinion, the well-being and safety of the children became an issue only a few weeks after the father left the country. DHR was required to intervene in September 2006 after receiving a report that “the mother had been found walking the street, crying and calling for help with the children.” 12 So.3d at 104. Furthermore, despite the efforts of the mother's friends, the mother's family members, and DHR employees, several temporary plans designed to assist the mother in caring for the children failed. 12 So.3d at 104-05. Because the mother could not properly care for the children and the father was absent from the family, DHR determined that the children had become dependent and petitioned the juvenile court for custody of the children.